FILED

OCT 28 2011

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

LAWRENCE A. NORDSTROM,

Plaintiff,

vs.

U.S. BANK, N.A., INC. and DOES 1 to 50,
Inclusive,

Defendants.

CASE NO. 11-CV-1554 BEN (CAB)

**ORDER:**

**(1) GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

**(2) GRANTING MOTION TO STRIKE**

[Docket No. 3]

Presently before the Court is Plaintiff's Motion to Dismiss Claims 1 and 3–9 and Motion to Strike Paragraph 33. (Docket No. 3.) For the reasons set forth below, the Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART.** The Motion to Strike is **GRANTED**.

## BACKGROUND

Plaintiff Lawrence Nordstrom was hired by Defendant U.S. Bank's predecessor PFF Bank & Trust on March 12, 2007 as a salaried loan officer. (Compl. ¶ 6.)[1] Plaintiff alleges that starting in July 2007, Defendant and its management level employees—Greg Standlea, James Milhiser and Barbara Borthwick—"embarked on a decided course of action to retaliate, discriminate, harass, intimidate and eliminate Plaintiff Mr. NORDSTROM from the employ of US BANK because Plaintiff Mr.

---

[1] All of the facts laid out in this Order are drawn from the allegations in the Complaint.

1  NORDSTROM had taken issue/complained to them regarding following their failure to accurately
2  report the Bank's financial condition to investors, accurately report loan charge-offs, provide accurate
3  information to KPMG, LLP the Bank's accountants, and other FDIC and other regulatory compliance
4  procedures and policies, inter alia." (*Id.* ¶ 10.)

5      Plaintiff raised concerns about the Bank's financial condition on several occasions. First,
6  Plaintiff asked John Burns, "a friend of his, who is a nationally well known real estate economist,
7  consultant and speaker," to inform Mr. McCarthy about his financial concerns. (*Id.* ¶ 10.b.) Mr.
8  McCarthy refused to meet with Mr. Burns, stating that he did not need outside help. (*Id.*) Second,
9  Plaintiff asked bank employee/consultant Craig Harper to tell Mr. Standlea that "the bank has cancer
10 and it's terminal" shortly thereafter. (*Id.* ¶ 10.c.) Upon receiving this information, Mr. Standlea
11 "screamed shut up, shut up!" (*Id.*) Third, in March 2008, Plaintiff correctly predicted that there would
12 be $150,000,000 in loan losses in his department for fiscal year end March 31, 2008. (*Id.* ¶¶ 10.d,
13 10.e.) Immediately following, Mr. Milhiser demoted Plaintiff and moved him to an isolated work
14 area. (*Id.* ¶ 10.d.) Fourth, in March 2010, Plaintiff prepared an accurate WAM for review by Mr.
15 Standlea, Mr. Milhiser, Mr. Brian Summers, and Ms. Jill Castleman. (*Id.* ¶ 10.g.) "With the others
16 present and in response to Mr. NORDSTROM's requests, Greg Standlea went ballistic. He stood up,
17 screamed and pointed his finger at Mr. NORDSTROM yelling at the top of his voice 'I'm going to sue
18 you, I'm going to sue you.'" (*Id.*)

19      As a result of raising concerns about the Bank's financial condition, Defendant's management
20 level employees retaliated against Plaintiff in several ways. In July 2009, Mr. Milhiser, who had
21 become Plaintiff's direct supervisor, gave Plaintiff a workload that was unmanageable, despite
22 Plaintiff working 70 to 80 hours per week. (*Id.* ¶ 10.h.) In March 2010, "Mr. Milhiser wrote a
23 retaliatory, pretextual and inaccurate scathing performance review which focused only on false
24 critiques and omitted his accomplishments." (*Id.* ¶ 10.i.) On March 18, 2010, Mr. Milhiser placed
25 Plaintiff on an "equally retaliatory, pretextual and inaccurate 'work performance improvement plan.'"
26 (*Id.* ¶ 10.j.) On August 5, 2010, despite Plaintiff's compliance with the work performance
27 improvement plan, Mr. Milhiser gave Plaintiff a 30-day notice of termination. (*Id.* ¶ 10.k.)
28      Because of these stressors, Dr. Aziz at Kaiser Permanente placed Plaintiff on a "work stress

1   related disability leave" in June or July of 2010. (*Id.* ¶¶ 10.l, 10.m.) On December 29, 2010, Dr. Aziz

2   placed Plaintiff on an additional 30-day work stress related disability leave from January 3, 2011 to

3   February 4, 2011. (*Id.* ¶ 10.p.) On December 30, 2010, Plaintiff delivered Mr. Milhiser a letter, in

4   which he complained about the "retaliations" he received from Mr. Milhiser and Mr. Standlea. (*Id.*)

5   On December 31, 2010, U.S. Bank terminated Plaintiff's employment. (*Id.*)

6          Plaintiff originally filed suit in San Diego County Superior Court on May 16, 2011. The

7   Complaint asserts nine causes of action: (1) tortious wrongful termination in violation of fundamental

8   public policies; (2) physical disability discrimination in violation of Government Code § 12940 *et seq.*;

9   (3) violation of California Labor Code § 1102.5; (4) breach of written employer policies; (5) failure

10   to investigate/prevent discrimination under California Government Code § 12940 *et seq.*; (6)

11   negligence, negligent supervision, training and hiring; (7) breach of implied covenant of good faith

12   and fair dealing; (8) intentional infliction of emotional distress; and (9) negligent infliction of

13   emotional distress. On July 13, 2011, Defendant removed the action.

14          Presently before the Court is Defendant's Motion to Dismiss Claims 1 and 3–9 and Motion to

15   Strike Paragraph 33. Being fully briefed, the Court finds the Motions suitable for determination on

16   the papers without oral argument, pursuant to Civil Local Rule 7.1.d.1.

17                                        **DISCUSSION**

18          Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate if, taking all factual

19   allegations as true, the complaint fails to state a plausible claim for relief on its face. FED. R. CIV. P.

20   12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007). Under this standard, dismissal

21   is appropriate if the complaint fails to state enough facts to raise a reasonable expectation that

22   discovery will reveal evidence of the matter complained of, or if the complaint lacks a cognizable legal

23   theory under which relief may be granted. *Twombly*, 550 U.S. at 556.

24          Defendant moves to dismiss Claims 1 and 3–9. In addition, Defendant requests that the Court

25   strike paragraph 33 from the Complaint.

26   ///

27   ///

28   ///

1    I.    **MOTION TO DISMISS**

2         A.    **Claim 1: Tortious Wrongful Termination in Violation of Fundamental**

3              **Public Policies**

4         In his First Claim, Plaintiff alleges that "[t]he harassment, intimidation, discrimination,

5    retaliation and ultimate wrongful termination against Plaintiff by Defendant was substantially due to

6    Plaintiff Mr. NORDSTROM engaging in a [sic] legally protected activities namely Plaintiff Mr.

7    NORDSTROM had taken issue/complained to them regarding following their failure to accurately

8    report the Bank's financial condition to investors, accurately report loan charge-offs, provide accurate

9    information to KPMG, LLP the Bank's accountants, and other FDIC and other regulatory compliance

10   procedures and policies, inter alia." (Compl. ¶ 22.)  "Defendant US BANK's wrongful/retaliatory acts

11   were in violation of California law and were in Violation of Fundamental Public Policy as they are

12   supported by both constitutional and statutory provisions." (*Id.* ¶ 24.)

13        In California, an employer may generally terminate an employee "at will," or without cause.

14   *Stevenson v. Superior Court*, 16 Cal. 4th 880, 887 (1997).  An exception to this general rule is that

15   "[a]n employer may not discharge an at will employee for a reason that violates fundamental public

16   policy." *Id.*  In order to state a claim for wrongful termination in violation of fundamental public

17   policies, four requirements must be met: "First, the policy must be supported by either constitutional

18   or statutory provisions.  Second, the policy must be 'public' in the sense that it 'inures to the benefit

19   of the public' rather than serving merely the interests of the individual.  Third, the policy must have

20   been articulated at the time of the discharge.  Fourth, the policy must be 'fundamental' and

21   'substantial.'" *Id.* at 889–90.

22        Here, Plaintiff's claim does not meet the first requirement of wrongful termination in violation

23   of fundamental public policy in that Plaintiff does not allege that Defendant violated a specific

24   constitutional or statutory provision.  Plaintiff alleges only that Defendant's actions were in "violation

25   of California law and were in Violation of Fundamental Public Policy as they are supported by both

26   constitutional and statutory provisions." (Compl. ¶ 24.)  In his opposition, Plaintiff argues that

27   "complaining/reporting his employers' failure to comply with FDIC, SEC and other statutory and

28   compliance regulations is sufficiently pled." (Opp. at 6.)  Generally citing FDIC and SEC "statutory

1  and compliance regulations" as well as California law is insufficient, as Plaintiff fails to tether the

2  allegedly violated public policy to specific constitutional or statutory provisions. *See Green v. Ralee*

3  *Eng'g Co.*, 19 Cal. 4th 66, 84 (1998); *Stevenson*, 16 Cal. 4th at 889; *Turner v. Anheuser-Busch, Inc.*,

4  7 Cal. 4th 1238, 1257 (1994). Accordingly, the First Claim is **DISMISSED WITHOUT**

5  **PREJUDICE**.

6  **B.   Claim 3: Whistleblower Retaliation**

7  In his Third Claim, Plaintiff alleges that "Plaintiff Mr. NORDSTROM was terminated for

8  engaging in legally protected activities namely Plaintiff Mr. NORDSTROM had taken

9  issue/complained to them regarding following their failure to accurately report the Bank's financial

10  condition to investors, accurately report loan charge-offs, provide accurate information to KPMG, LLP

11  the Bank's accountants, and other FDIC and other regulatory compliance procedures and policies, inter

12  alia," in violation of California Labor Code § 1102.5(c). (Compl. ¶¶ 35, 36.)

13  Although Plaintiff cites to Section 1102.5(c),[2] it is apparent from both the allegations in the

14  Complaint and the Opposition that Plaintiff intended to cite Section 1102.5(b). According to Section

15  1102.5(b), "An employer may not retaliate against an employee for disclosing information to a

16  government or law enforcement agency, where the employee has reasonable cause to believe that the

17  information discloses a violation of state or federal statute, or a violation or noncompliance with a state

18  or federal rule or regulation." CAL. LAB. CODE § 1102.5(b).

19  Here, because Plaintiff has not alleged that he disclosed Defendant's purported illegal conduct

20  to any government or law enforcement agency, he has not stated a claim for violation of Section

21  1102.5(b). *See Romaneck v. Deutsche Asset Mgmt.*, No. C05-2473 TEH, 2005 WL 2171987, at *3

22  (N.D. Cal. Sept. 6, 2005) (dismissing claim brought under Section 1102.5(b) where the plaintiff failed

23  to allege that he reported his employer's allegedly illegal conduct to a government or law enforcement

24

25      [2] Even if brought under Section 1102.5(c), Plaintiff's claim must be dismissed. Under Section
1102.5(c), "An employer may not retaliate against an employee for refusing to participate in an activity
26  that would result in a violation of state or federal statute, or a violation or noncompliance with a state
or federal rule or regulation." CAL. LAB. CODE § 1102.5(c). In order to state a claim under Section
27  1102.5(c), the plaintiff-employee must allege that he refused to participate in conduct that would result
in a violation of law. CAL. LAB. CODE §1102.5(c); *Harrah v. Toyota Logistic Servs., Inc.*, No. LACV
28  03-8111R(FMOX), 2004 WL 3567979, at *2 n.2 (C.D. Cal. Feb. 9, 2004). Plaintiff, however, has not
alleged that he refused to participate in conduct that would result in a violation of law.

agency).  Accordingly, the Third Claim is **DISMISSED WITHOUT PREJUDICE**.

                **C.**     **Claims 4–7**

Defendant moves to dismiss Claims 4–7.  Plaintiff withdraws these claims in order to "streamline this case."  (Opp. at 6.)  Accordingly, Claims 4–7 are **DISMISSED WITHOUT PREJUDICE**.

                **D.**     **Claim 8: Intentional Infliction of Emotional Distress, and**

                       **Claim 9: Negligent Infliction of Emotional Distress**

In his Eighth Claim, Plaintiff alleges that "Defendant US BANK intentionally, and with a malicious motive, engaged in conduct that was calculated to cause Plaintiff to suffer humiliation, mental anguish and emotional distress.  This extreme and outrageous conduct by Defendants in concert together, included harassing, intimidating, discriminating and retaliating against Plaintiff without good cause and falsely justifying such actions."  (Compl. ¶ 60.)  Defendant's actions caused Plaintiff "great mental distress, pain and suffering."  (*Id.* ¶ 62.)  In his Ninth Claim, Plaintiff alleges that "Defendant negligently engaged in the conduct of harassing, intimidating, discriminating and retaliating against Plaintiff without good cause and by falsely justifying such wrongful conduct even though Defendant knew or should have known that such wrongful conduct would cause Plaintiff to suffer humiliation, mental anguish, and emotional distress."  (*Id.* ¶ 66.)  This conduct caused Plaintiff "great mental distress, pain and suffering."  (*Id.* ¶ 67.)

                  **1.**     **Preemption by the Workers' Compensation Act**

Emotional distress injuries arising out of the employment relationship are generally preempted by the Workers' Compensation Act.  *Livitsanos v. Superior Court*, 2 Cal. 4th 744, 754 (1992).  "The emotional distress which stems from an employer's unfavorable supervisory decisions, including termination of employment, is a normal part of the employment relationship, even when the distress results from an employer's conduct that is intentional, unfair or outrageous."  *Phillips v. Gemini Moving Specialists*, 63 Cal. App. 4th 563, 577 (2d Dist. 1998).  The exclusive remedy provisions of workers' compensation, however, do not bar a claim for emotional distress damages resulting from conduct that "contravenes fundamental public policy" or "exceeds the risks inherent in the employment relationship."  *Livitsanos*, 2 Cal. 4th at 754; *see also Smith v. Int'l Bhd. of Elec. Workers*, 109 Cal.

1   App. 4th 1637, 1658 (2d Dist. 2003).

2          Here, in pleading his claims for infliction of emotional distress, Plaintiff incorporated by

3   reference all of the allegations of his previous claims.  Thus, Plaintiff's emotional distress claims are

4   premised on the same conduct as his Second Claim for physical disability discrimination in violation

5   of California Government Code § 12940.  Section 12940 prohibits an employer from terminating or

6   discriminating against an employee because of a physical disability, mental disability, or medical

7   condition.  CAL. GOV'T CODE § 12940.  In the Complaint, Plaintiff alleges that he was discriminated

8   against because he was put on work stress related disability leave by Dr. Aziz.  Plaintiff's Eighth and

9   Ninth Claims are premised on Defendant's conduct that allegedly exceeds the risks inherent in the

10  employment relationship, and are therefore not barred by the Workers' Compensation Act.

11                       **2.      Intentional Infliction of Emotional Distress**

12          "A cause of action for intentional infliction of emotional distress exists when there is (1)

13  extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard

14  of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme

15  emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's

16  outrageous conduct."  *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (internal quotation marks

17  omitted).

18          Defendant argues that even if the Eighth Claim is not barred by the Workers' Compensation

19  Act, Plaintiff has not alleged extreme or outrageous conduct by Defendant that would support a claim

20  for intentional infliction of emotional distress.  Whether Defendant's conduct rises to the level of

21  "extreme and outrageous conduct," however, is a factual determination not appropriate to resolve on

22  a motion to dismiss.  Indeed, two of the district courts in Defendant's cited cases determined whether

23  the defendant's actions amounted to extreme or outrageous conduct on a motion for summary

24  judgment, not a motion to dismiss.  *See Schneider v. TRW, Inc.*, 938 F.2d 986, 992–93 (9th Cir. 1991)

25  (granting judgment against plaintiff on the plaintiff's intentional infliction of emotional distress claim

26  when ruling on a summary judgment motion); *Hughes*, 46 Cal. 4th at 1051 (same).  The other two

27  cases cited by Defendant are inapposite.  *See Buscemi v. McDonnell Douglas Corp.*, 736 F.2d 1348,

28  1352 (9th Cir. 1984) (finding plaintiff's claim for intentional infliction of emotional distress was

1    preempted by the National Labor Relations Act); *Shoemaker v. Myers*, 52 Cal. 3d 1, 25 (1990) (finding

2    plaintiff's claim for intentional infliction of emotional distress was preempted by the workers'

3    compensation exclusivity provisions, to the extent that the claim was not dependent upon the violation

4    of an express statute or violation of fundamental public policy).

### 3.    Negligent Infliction of Emotional Distress

6         To successfully state a claim for negligent infliction of emotional distress, a plaintiff must

7    allege that: (1) the defendant engaged in negligent conduct; (2) the plaintiff suffered serious emotional

8    distress; and (3) the defendant's negligent conduct was a substantial factor in causing the plaintiff's

9    emotional distress. *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1072 (1992).

10        Defendant argues that Plaintiff has not alleged that Defendant engaged in any negligent conduct

11   to support a claim for negligent infliction of emotional distress.  Plaintiff alleges that "Defendant

12   negligently engaged in the conduct of harassing, intimidating, discriminating and retaliating against

13   Plaintiff." (Compl. ¶ 66.)  Whether Defendant may have acted negligently or intentionally in allowing

14   its management level employees to engage in the alleged harassment, intimidation, discrimination, and

15   retaliation is a factual dispute not appropriate to resolve on a motion to dismiss.

16        Accordingly, Defendant's motion to dismiss the Eighth and Ninth Claims is **DENIED.**

17   **II.    MOTION TO STRIKE**

18        Under Federal Rule of Civil Procedure 12(f), the Court may "strike from a pleading an

19   insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  An "immaterial

20   matter" is a matter that "has no essential or important relationship to the claim for relief or the defenses

21   being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (internal quotation

22   marks omitted), *rev'd on other grounds by* 510 U.S. 517 (1994).  An "impertinent matter" is a matter

23   that "do[es] not pertain, and [is] not necessary, to the issues in question." *Id.* (internal quotation marks

24   omitted).

25        In his Second Claim for physical disability discrimination, Plaintiff alleges that "[t]he hostile,

26   discriminatory treatment of Plaintiff was decided upon by Defendant US BANK substantially due to

27   Plaintiff's stress related physical disability/medical condition," in violation of Government Code

28   § 12940. (Compl. ¶ 30.)  In addition, Plaintiff alleges that "[t]he acts of Defendants alleged above

1    constitute a violation of Plaintiff's California Constitutional rights under Article 1, § 8, entitling

2    Plaintiff to bring an action for damages thereunder prior to ripening of him right of action under

3    Government Code § 12940." (*Id.* ¶ 33.) Defendant moves to strike paragraph 33 from the Complaint.

4         The California Constitution does not prohibit disability discrimination. According to Article

5    I, section 8, "A person may not be disqualified from entering or pursuing a business, profession,

6    vocation, or employment because of sex, race, creed, color, or national or ethnic origin." CAL. CONST.

7    art. I, § 8. Accordingly, paragraph 33 has no bearing on this action, and is immaterial and impertinent.

8    Plaintiff concedes that "paragraph 33 is in-artfully plead" and seeks leave to amend the paragraph.

9    Accordingly, paragraph 33 is **STRICKEN** from the Complaint, with leave to amend.

10                                    **CONCLUSION**

11         For the foregoing reasons, the Motion to Dismiss is **GRANTED IN PART AND DENIED**

12   **IN PART**. Claims 1, 3, 4, 5, 6, and 7 are dismissed without prejudice. Claims 8 and 9 remain. In

13   addition, the Motion to Strike is **GRANTED**. Paragraph 33 of the Complaint is stricken, with leave

14   to amend. Plaintiff is **GRANTED** forty-five (45) days from the date of this Order to file a First

15   Amended Complaint.

16

17        **IT IS SO ORDERED.**

18

19   DATED: October 17, 2011

20                                         HON. ROGER T. BENITEZ
                                          United States District Court Judge

21

22

23

24

25

26

27

28

11cv1554