FILED

2012 JUL 23 AM 11: 40

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE A. NORDSTROM,<br><br>　　　　　　　　　　Plaintiff,<br>vs.<br><br>U.S. BANK, N.A., INC. and DOES 1 to 50, Inclusive,<br><br>　　　　　　　　　　Defendants. | CASE NO. 11-CV-1554 BEN (KSC)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>[Docket No. 9] |

Presently before the Court is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint. (Docket No. 9.) For the reasons set forth below, the Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

Plaintiff Lawrence Nordstrom was hired by Defendant U.S. Bank's predecessor PFF Bank & Trust on March 12, 2007 as a salaried loan officer. (First Am. Compl. ¶ 6.)[1] Plaintiff alleges that starting in July 2007, Defendant and its management level employees—Greg Standlea, James Milhiser and Barbara Borthwick—"embarked on a decided course of action to retaliate, discriminate, harass, intimidate and eliminate Plaintiff Mr. NORDSTROM from the employ of US BANK because Plaintiff Mr. NORDSTROM had taken issue/complained to them regarding following their failure to accurately

---

[1] All of the facts laid out in this Order are drawn from the allegations in the First Amended Complaint.

1 | report the Bank's financial condition to investors, accurately report loan charge-offs, provide accurate
2 | information to KPMG, LLP the Bank's accountants, and other violations of the Sarbanes-Oxley Act
3 | and other SEC/FDIC and other regulatory compliance procedures and policies, inter alia." (*Id.* ¶ 10.)

Plaintiff raised concerns about the Bank's financial condition on several occasions. First, Plaintiff asked John Burns, "a friend of his, who is a nationally well known real estate economist, consultant and speaker," to inform Mr. McCarthy about his financial concerns. (*Id.* ¶ 12.b.) Mr. McCarthy refused to meet with Mr. Burns, stating that he did not need outside help. (*Id.*) Second, Plaintiff asked bank employee/consultant Craig Harper to tell Mr. Standlea that "the bank has cancer and it's terminal" shortly thereafter. (*Id.* ¶ 12.c.) Upon receiving this information, Mr. Standlea "screamed shut up, shut up!" (*Id.*) Third, in March 2008, Plaintiff correctly predicted that there would be $150,000,000 in loan losses in his department for fiscal year end March 31, 2008. (*Id.* ¶¶ 12.d, 12.e.) Immediately following, Mr. Milhiser demoted Plaintiff and moved him to an isolated work area. (*Id.* ¶ 12.d.) Fourth, in March 2010, Plaintiff prepared an accurate "WAM" for review by Mr. Standlea, Mr. Milhiser, Mr. Brian Summers, and Ms. Jill Castleman. (*Id.* ¶ 12.g.) "With the others present and in response to Mr. NORDSTROM's requests, Greg Standlea went ballistic. He stood up, screamed and pointed his finger at Mr. NORDSTROM yelling at the top of his voice 'I'm going to sue you, I'm going to sue you.'" (*Id.*)

As a result of raising concerns about the Bank's financial condition, Defendant's management level employees retaliated against Plaintiff in several ways. In July 2009, Mr. Milhiser, who had become Plaintiff's direct supervisor, gave Plaintiff a workload that was unmanageable, despite Plaintiff working 70 to 80 hours per week. (*Id.* ¶ 12.h.) In March 2010, "Mr. Milhiser wrote a retaliatory, pretextual and inaccurate scathing performance review which focused only on false critiques and omitted his accomplishments." (*Id.* ¶ 12.i.) On March 18, 2010, Mr. Milhiser placed Plaintiff on an "equally retaliatory, pretextual and inaccurate 'work performance improvement plan.'" (*Id.* ¶ 12.j.) On August 5, 2010, despite Plaintiff's compliance with the work performance improvement plan, Mr. Milhiser gave Plaintiff a 30-day notice of termination. (*Id.* ¶ 12.k.)

Because of these stressors, Dr. Aziz at Kaiser Permanente placed Plaintiff on a "work stress related disability leave" in June or July of 2010. (*Id.* ¶¶ 12.l, 12.m.) On October 29, 2010, Plaintiff

received a voice mail from Mr. Milhiser and Ms. Borthwick, Vice President of Human Resources for Defendant, wherein they informed Plaintiff that Ms. Borthwick would be speaking to him later. (*Id.* ¶ 12.o.) In their conversation later that day, Plaintiff described various "complaints and retaliations" to Ms. Borthwick. (*Id.*) On November 1, 2010, Ms. Borthwick told Plaintiff that Defendant intended to fire him. (*Id.*)

On December 29, 2010, Dr. Aziz placed Plaintiff on an additional 30-day work stress related disability leave from January 3, 2011 to February 4, 2011. (*Id.* ¶ 10.p.) On December 30, 2010, Plaintiff delivered Mr. Milhiser a letter, in which he complained about the "retaliations" he received from Mr. Milhiser and Mr. Standlea. (*Id.*) On December 31, 2010, U.S. Bank terminated Plaintiff's employment. (*Id.*)

Plaintiff originally filed suit in San Diego County Superior Court on May 16, 2011. On July 13, 2011, Defendant removed the action. Defendant filed a motion to dismiss four of Plaintiff's claims on July 20, 2011. On October 27, 2011, the Court granted Defendant's motion in part and denied it in part, and gave Plaintiff leave to amend his complaint. On November 28, 2011, Plaintiff filed his first amended complaint, asserting four causes of action: (1) tortious wrongful termination in violation of fundamental public policies; (2) physical disability discrimination in violation of the California Fair Employment and Housing Act ("FEHA"), CAL. GOV'T CODE § 12940 *et seq.*; (3) intentional infliction of emotional distress; and (4) negligent infliction of emotional distress.

Presently before the Court is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint. Being fully briefed, the Court finds the Motion suitable for determination on the papers without oral argument, pursuant to Civil Local Rule 7.1.d.1.

## DISCUSSION

Plaintiff's claims must "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible when the allegations of the complaint allow "the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Id.*

When considering a motion to dismiss, the Court must accept the truth of all well-pleaded factual allegations as well as any reasonable inferences drawn from those allegations, and construe the complaint in the light most favorable to the plaintiff. *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

Defendant moves to dismiss all claims in the First Amended Complaint. Each claim will be considered in turn.

### I. TORTIOUS WRONGFUL TERMINATION IN VIOLATION OF FUNDAMENTAL PUBLIC POLICIES

In his First Claim, Plaintiff alleges that "[t]he harassment, intimidation, discrimination, retaliation and ultimate wrongful termination against Plaintiff by Defendant was substantially due to Plaintiff Mr. NORDSTROM engaging in a [sic] legally protected activities namely Plaintiff Mr. NORDSTROM had taken issue/complained to them regarding following their failure to accurately report the Bank's financial condition to investors, accurately report loan charge-offs, provide accurate information to KPMG, LLP the Bank's accountants, al [sic] in violation of [the Sarbanes-Oxley Act of 2002, or "SOX"] and other SEC/FDIC and other regulatory compliance procedures and policies, inter alia." (First Am. Compl. ¶ 24.) "Defendant US BANK's wrongful/retaliatory acts were in violation of Federal Law/California law and were in Violation of Fundamental Public Policy as they are supported by both constitutional and statutory provisions [SOX]." (*Id.* ¶ 26.)

In California, an employer may generally terminate an employee "at will," or without cause. *Stevenson v. Super. Ct.*, 16 Cal. 4th 880, 887 (1997). An exception to this general rule is that "[a]n employer may not discharge an at will employee for a reason that violates fundamental public policy." *Id.* In order to state a claim for wrongful termination in violation of a fundamental public policy, "the policy must be supported by either constitutional or statutory provisions." *Id.* at 889-90. In the First Amended Complaint, Plaintiff alleges he was terminated because he "took issue/complained" about violations of SOX. (First Am. Compl. ¶ 24.) Plaintiff is essentially alleging a SOX whistleblower

- 4 -

11cv1554

retaliation claim.

"[W]hen a plaintiff relies upon a statutory prohibition to support a common law cause of action for wrongful termination in violation of public policy, the common law claim is subject to statutory limitations affecting the nature and scope of the statutory prohibition . . . ." *Stevenson*, 16 Cal. 4th at 904. Here, Plaintiff's common law claim for wrongful termination based on the public policy against whistleblower retaliation as articulated in SOX is subject to SOX limitations on the nature and scope of the statutory prohibition against whistleblower retaliation. *See Esberg v. Union Oil Co.*, 28 Cal. 4th 262, 272 (2002). To state a *prima facie* case under 18 U.S.C. § 1514A, Plaintiff must show that: (1) he engaged in a protected activity; (2) Defendant knew or suspected, actually or constructively, that he engaged in the protected activity; (3) he suffered an adverse employment action; and (4) the circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the adverse action. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 996 (9th Cir. 2009).

"[T]o constitute protected activity under Sarbanes-Oxley, an employee's communications must definitively and specifically relate to [one] of the listed categories of fraud or securities violations under 18 U.S.C. § 1514A(a)(1)." *Id.* at 996-97 (internal quotation marks and alteration omitted). "However . . . [a]n employee need not cite a code section he believes was violated to trigger the protections of § 1514A." *Id.* at 997 (internal quotation marks omitted).

Under the SOX whistleblower retaliation statute, protected activity extends to an employee who provides information that he reasonably believes constitutes a SOX violation to a person with supervisory authority or a non-supervisor who nonetheless possesses the authority to investigate or terminate misconduct. While Plaintiff alleges that he believed SOX violations occurred, he does not indicate that he actually *reported* such violations to management or supervisors. Many of Plaintiff's allegations merely relate to matters that he overheard, or are too vague so as to not satisfy the "definitive and specific" requirement outlined in *Van Asdale*. Though Plaintiff did make complaints to Ms. Borthwick during their October 29, 2010 phone call, it is unclear if these complaints contained any information about perceived SOX violations, or if they merely related to his treatment by supervisors.

Because Plaintiff has not sufficiently pleaded that he engaged in protected activity, he has

failed to state a *prima facie* case under 18 U.S.C. § 1514A. It is therefore unnecessary to examine the remaining requirements of a whistleblower retaliation claim. Plaintiff has thus failed to state a valid cause of action for wrongful termination in violation of fundamental public policies. Accordingly, Plaintiff's First Claim is **DISMISSED WITHOUT PREJUDICE.**

## II. PHYSICAL DISABILITY DISCRIMINATION IN VIOLATION OF CALIFORNIA GOVERNMENT CODE § 12940 *ET. SEQ.*

In his Second Claim for physical disability discrimination, Plaintiff alleges that "[t]he hostile, discriminatory treatment of Plaintiff was decided upon by Defendant US BANK substantially due to Plaintiff's stress related physical disability/medical condition," in violation of California Government Code § 12940. (First Am. Compl. ¶ 30.)

The FEHA prohibits an employer from terminating or discriminating against an employee because of a physical disability, mental disability, or medical condition. CAL. GOV'T CODE § 12940. "A prima facie case for discrimination on grounds of physical disability under the FEHA requires plaintiff to show: (1) he suffers from a disability; (2) he is otherwise qualified to do his job; and, (3) he was subjected to adverse employment action because of his disability." *Faust v. Cal. Portland Cement Co.*, 150 Cal. App. 4th 864, 886 (2d Dist. 2007) (internal quotation marks omitted).

Plaintiff has alleged sufficient facts to meet the minimal burden required to establish a *prima facie* case of discrimination. First, he has alleged that he suffered from a disability or medical condition as defined by FEHA. *See* CAL. GOV'T CODE § 12926(i) & (l). Second, he alleges that, other than a receiving retaliatory employment evaluation and being placed on a "work performance improvement plan," he otherwise "continuously provided outstanding performance" in his position and was thus otherwise qualified to do his job. (First Am. Compl. ¶ 9 (emphasis omitted).) Finally, Plaintiff alleges that he was on disability leave for several months, and that two days *after* notifying his employer that his leave had been extended, he was terminated. While Plaintiff will ultimately have to prove by a preponderance of the evidence that his employment was terminated *because of* discrimination, he need only make a minimal showing in order to adequately state a claim. "[G]enerally an employee need only offer sufficient circumstantial evidence to give rise to a reasonable *inference* of discrimination [in order to establish a prima facie case of disability discrimination under

the FEHA]." *Sandell v. Taylor-Listug, Inc.*, 188 Cal. App. 4th 297, 310 (4th Dist. 2010).

Ultimately the question of whether Plaintiff's alleged disability contributed to his termination is a matter reserved for the fact finder. Plaintiff has pleaded sufficient facts in support of a cognizable legal theory of physical disability discrimination. Accordingly, Defendant's Motion to Dismiss Plaintiff's Second Claim is **DENIED**.

### III. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

In his Third Claim, Plaintiff alleges that "Defendant US BANK intentionally, and with a malicious motive, engaged in conduct that was calculated to cause Plaintiff to suffer humiliation, mental anguish and emotional distress. This extreme and outrageous conduct by Defendants in concert together, included harassing, intimidating, discriminating and retaliating against Plaintiff without good cause and falsely justifying such actions." (First Am. Compl. ¶ 35.) Defendant's actions caused Plaintiff "great mental distress, pain and suffering." (*Id.* ¶ 37.) In his Fourth Claim, Plaintiff alleges that "Defendant negligently engaged in the conduct of harassing, intimidating, discriminating and retaliating against Plaintiff without good cause and by falsely justifying such wrongful conduct even though Defendant knew or should have known that such wrongful conduct would cause Plaintiff to suffer humiliation, mental anguish, and emotional distress." (*Id.* ¶ 41.) This conduct caused Plaintiff "great mental distress, pain and suffering." (*Id.* ¶ 42.) Defendant's argument in support of dismissing the Third and Fourth Claims is substantially the same as its argument previously denied by the Court. (*See* Docket No. 3, at 12–13.)

#### A. Preemption by the Workers' Compensation Act

Emotional distress injuries arising out of the employment relationship are generally preempted by the Workers' Compensation Act. *Livitsanos v. Super. Ct.*, 2 Cal. 4th 744, 754 (1992). "The emotional distress which stems from an employer's unfavorable supervisory decisions, including termination of employment, is a normal part of the employment relationship, even when the distress results from an employer's conduct that is intentional, unfair or outrageous." *Phillips v. Gemini Moving Specialists*, 63 Cal. App. 4th 563, 577 (2d Dist. 1998). The exclusive remedy provisions of workers' compensation, however, do not bar a claim for emotional distress damages resulting from

conduct that "contravenes fundamental public policy" or "exceeds the risks inherent in the employment relationship." *Livitsanos*, 2 Cal. 4th at 754; *see also Smith v. Int'l Bhd. of Elec. Workers*, 109 Cal. App. 4th 1637, 1658 (2d Dist. 2003).

Here, in pleading his claims for infliction of emotional distress, Plaintiff incorporated by reference all of the allegations of his previous claims. Thus, Plaintiff's emotional distress claims are premised on the same conduct as his Second Claim for physical disability discrimination in violation of California Government Code § 12940. Section 12940 prohibits an employer from terminating or discriminating against an employee because of a physical disability, mental disability, or medical condition. CAL. GOV'T CODE § 12940. In the First Amended Complaint, Plaintiff alleges that he was discriminated against because he was put on work stress related disability leave by Dr. Aziz. Plaintiff's Third and Fourth Claims are premised on Defendant's conduct that allegedly exceeds the risks inherent in the employment relationship, and are therefore not barred by the Workers' Compensation Act.

### B.   Intentional Infliction of Emotional Distress

"A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (internal quotation marks omitted).

Defendant argues that even if the Third Claim is not barred by the Workers' Compensation Act, Plaintiff has not alleged extreme or outrageous conduct by Defendant that would support a claim for intentional infliction of emotional distress. As discussed in the Court's previous order in this case, whether Defendant's conduct rises to the level of "extreme and outrageous conduct," however, is a factual determination not appropriate to resolve on a motion to dismiss. (Docket No. 7, at 7–8.) Indeed, two of the district courts in Defendant's cited cases determined whether the defendant's actions amounted to extreme or outrageous conduct on a motion for summary judgment, not a motion to dismiss. *See Schneider v. TRW, Inc.*, 938 F.2d 986, 992–93 (9th Cir. 1991) (granting judgment against

plaintiff on the plaintiff's intentional infliction of emotional distress claim when ruling on a summary judgment motion); *Hughes*, 46 Cal. 4th at 1051 (same). The other two cases cited by Defendant are inapposite. *See Buscemi v. McDonnell Douglas Corp.*, 736 F.2d 1348, 1352 (9th Cir. 1984) (finding plaintiff's claim for intentional infliction of emotional distress was preempted by the National Labor Relations Act); *Shoemaker v. Myers*, 52 Cal. 3d 1, 25 (1990) (finding plaintiff's claim for intentional infliction of emotional distress was preempted by the workers' compensation exclusivity provisions, to the extent that the claim was not dependent upon the violation of an express statute or violation of fundamental public policy). Accordingly, Defendant's motion to dismiss the Third Claim is **DENIED**.

### C. Negligent Infliction of Emotional Distress

To successfully state a claim for negligent infliction of emotional distress, a plaintiff must allege that: (1) the defendant engaged in negligent conduct; (2) the plaintiff suffered serious emotional distress; and (3) the defendant's negligent conduct was a substantial factor in causing the plaintiff's emotional distress. *Burgess v. Super. Ct.*, 2 Cal. 4th 1064, 1072 (1992).

Defendant argues that Plaintiff has not alleged that Defendant engaged in any negligent conduct to support a claim for negligent infliction of emotional distress. Plaintiff alleges that "Defendant negligently engaged in the conduct of harassing, intimidating, discriminating and retaliating against Plaintiff . . . ." (First Am. Compl. ¶ 41.) Whether Defendant may have acted negligently or intentionally in allowing its management level employees to engage in the alleged harassment, intimidation, discrimination, and retaliation is a factual dispute not appropriate to resolve on a motion to dismiss. Accordingly, Defendant's motion to dismiss the Fourth Claim is **DENIED**.

### CONCLUSION

For the foregoing reasons, the Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's First Claim is **DISMISSED WITHOUT PREJUDICE**. Defendant's motion to dismiss Plaintiff's Second, Third, and Fourth Claims is **DENIED**. Plaintiff is granted leave to file a second amended complaint within 30 days of the date this Order is Filed.

**IT IS SO ORDERED.**

DATED: July 8, 2012

HON. ROGER T. BENITEZ
United States District Court Judge